IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASEM M. ELGAWHARY            :
                             :
    v.                       :    Civil Action No. DKC 17-1762
                                  Criminal No. DKC 14-0068
                             :
UNITED STATES OF AMERICA     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion to vacate sentence filed by Petitioner Asem Elgawhary ("Petitioner"). (ECF No. 87). For the following reasons, the motion to vacate will be denied.

**I. Background**

**A. Factual Background**

Petitioner was an employee of Bechtel Corporation ("Bechtel"), a global corporation involved in engineering, construction, and project management. In 1993, Bechtel established a joint venture with the Egyptian government's electrical company, Egyptian Electricity Holding Company ("EEHC"), called Power Generation Engineering and Services Company ("PGESCo"). EEHC subcontracted with private companies to perform services on its behalf and PGESCo provided technical and management assistance in the engineering, design and construction of power projects, including for EEHC. PGESCo assisted EEHC in identifying possible subcontractors, soliciting

bids and awarding contracts to perform work for EEHC. From 1996 to 2011, Petitioner was "assigned by Bechtel to be the General Manager at PGESCo. During that time, . . . [Petitioner] was employed by both Bechtel and PGESCo." (ECF No. 64-1, at 1). His responsibilities included oversight of the competitive bidding process and assisting in selecting companies for subcontracting work. He had access to information about the bidding process and access to key decision makers at EEHC who had final responsibility for selecting the subcontractors.

From 2003 until 2011, various companies paid Petitioner money "for the purpose of attempting to secure a competitive and unfair advantage in the bidding process." (ECF No. 64-1, at 3). Petitioner received over $5,000,000 in payments. Petitioner concealed all information about these payments from his employers. Petitioner also conspired to move the money he obtained from these payments through financial institutions to "disguise the nature and source of the funds." (*Id.* at 5). To cover-up the source of the payments further, Petitioner told employees of the Internal Revenue Service that the money he deposited into his savings accounts were from foreign relatives and not from companies bidding on contracts with his employers.

On December 4, 2014, Petitioner pled guilty to mail fraud, conspiracy to launder money, and interference with the administration of the Internal Revenue laws and was sentenced to

2

42 months imprisonment, followed by one year of supervised release.

**B.   Procedural History**

On June 26, 2017, Petitioner filed a motion to vacate sentence. Petitioner argued that after the decision of the Supreme Court of the United States in *McDonnell v. United States*, 136 S.Ct. 2355 (2016), the conduct Petitioner pled guilty to no longer constituted a crime. (ECF No. 87, at 8). Accordingly, Petitioner challenged the validity of his plea. The Government responded, (ECF No. 98), and Petitioner replied. (ECF No. 101).

**II. Cause & Prejudice Exception to Procedural Default**

**A.   Standard of Review**

An issue may only be raised in a motion to vacate pursuant to 28 U.S.C. § 2255 if it has not been procedurally defaulted. If a claim could have been raised on direct appeal, and was not, the general rule is that "claims not raised on direct appeal may not be raised on collateral review[.]" *Massaro v. United States*, 538 U.S. 500, 504 (2003). "The Supreme Court has recognized an equitable exception to the bar, however, when a habeas applicant can demonstrate cause and prejudice[.]" *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010). To demonstrate cause, the petitioner must show a reason for a procedural default based "on something external to the defense,

such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). The petitioner must also demonstrate that he suffers "actual prejudice" if his claim is not reviewed. *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003).

**B. Analysis**

Petitioner's motion was filed well after the normal one year period for filing, but he claims that the motion is timely because it was filed within a year of the new rule of law announced in *McDonnell*. The Government concedes timeliness, but it argues that the motion to vacate is procedurally barred because Petitioner failed to raise the issue on direct appeal.

Failing to raise an argument on direct appeal is excused, and the procedural bar removed, when, at the time of the plea, the argument was not reasonably available. An argument is reasonably available when counsel would have known of the issue and could advise whether a client's interest would be best served by making the argument or not. *Reed v. Ross*, 468 U.S. 1, 14 (1984). If a petitioner makes a "tactical decision to forgo a procedural opportunity – for instance an opportunity to object at trial or to raise an issue on appeal," then the petitioner cannot later show "cause" to excuse the procedural default. *Id.*

In *Bousley v. United States*, 523 U.S. 614 (1998), a petitioner pled guilty to "using" a firearm in violation of 18

4

U.S.C. § 924(c)(1). After the guilty plea, the Supreme Court narrowed the conduct included under the definition of "use," and the petitioner filed a petition for a writ of habeas corpus arguing that his actions no longer fit the definition of "use." The petitioner argued that "the legal basis for his claim was not reasonably available to counsel at the time his plea was entered" and therefore that his failure to raise the issue on appeal should be excused. *Id.* at 622. The Court concluded the argument was reasonably available because "at the time of [the] petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession.'" *Id.* at 622-23.

Here, Petitioner pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. Petitioner contends that the argument that the conduct the Government identified did not constitute official acts performed in exchange for specific benefits was not reasonably available. (ECF No. 87-1, at 10). This argument, however, if applicable, nevertheless was readily available.

In *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 414 (1999), the Supreme Court held that "to establish a violation of 18 U.S.C. § 201(c)(1)(A), the Government must prove a link between a thing of value conferred upon a public official and a specific 'official act.'" In fact, the Court relied on

5

*Sun-Diamond* in rejecting the Government's argument in *McDonnell*. 136 S.Ct. at 2370. Petitioner's argument is essentially that his plea did not fulfill the Court's holding in *Sun-Diamond.* It fails because, "at the time of [P]etitioner's plea, the Federal Reporters [and online legal databases] were replete with cases involving challenges to the notion that" actions taken by public officials were "official acts" done in exchange for benefits. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see, e.g., United States v. Verrusio*, 762 F.3d 1, 11-15 (D.C. Cir. 2014); *United States v. Abbey*, 452 F.Supp.2d 766, 769 (E.D.Mich. 2006). Petitioner has not alleged ineffective assistance of counsel, and it would seem competent counsel would have advised Petitioner on the advantages and disadvantages of raising such an argument at trial and on appeal.

Moreover, at the time of the plea, the test the United States Court of Appeals for the Fourth Circuit had established for determining what qualified as honest services fraud required a case-by-case determination. According to the Fourth Circuit, although "every act within the range of official duty c[ame] within the purview of an 'official act'," the statute "d[id] not encompass every action taken in one's official capacity[.]" *United States v. Jefferson*, 674 F.3d 332, 356 (4th Cir. 2012).[1]

---

[1] Petitioner relies on the decision of the trial judge in *United States v. Jefferson*, No. 1:07-cr-209 (E.D.Va. Oct. 5,

6

This hazy line invited arguments that actions taken by public officials were not "official acts." To distinguish between "official acts" and non-official acts taken by a public official, the Fourth Circuit instructed courts to "look to whether a *quid pro quo* agreement existed." *United States v. McDonnell*, 64 F.Supp.3d 783, 789 (E.D.Va. 2014) *aff'd*, 792 F.3d 478 (4th Cir. 2015), *vacated and remanded*, 136 S.Ct. 2355 (2016). A *quid pro quo* agreement existed when "payments were made with the intent of securing a specific *type* of official action or favor in return." *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 2014) (emphasis in the original). Thus, the Fourth Circuit's test had an intent element, and any counsel would argue that the government failed to prove the requisite intent. Thus, Petitioner's argument was not only an available argument but an expected one.

Petitioner misunderstands the test for "cause" when he states that the decision in *McDonnell* was an "unanticipated" and "major change in the legal landscape" excusing his failure to raise the argument. (ECF No. 101, at 4). Even if true, the inquiry for "cause" to excuse a default focuses on arguments, not decisions. The question is not about the novelty or

---

2017), to argue that the decision in *McDonnell* was "unexpected." The petitioner in *Jefferson*, however, avoided the procedural default bar precisely because he consistently challenged the government's definition of official act. Petitioner here had the same opportunity, but did not take that tack.

7

importance of the Supreme Court's decision but rather whether the *argument* that led to that decision was novel. In the context of an honest services case, the argument that the actions were not "official actions" done in exchange for a benefit was commonplace and routine. Sometimes the argument prevailed. *See, e.g.*, *Valdes v. United States*, 457 F.3d 1319 (D.C. Cir. 2007) (en banc). Sometimes it did not. *See, e.g.*, *United States v. McDonough*, 727 F.3d 143 (1st Cir. 2013). Regardless, it was an available argument that Petitioner did not make.

Petitioner cites to *McDonnell* and United *States v. Silver*, 864 F.3d 102 (2d Cir. 2017), for his arguments on the merits, but those cases undermine his procedural argument. In *McDonnell*, the defendant was offered a chance to plead guilty to one felony charge and instead opted to go to trial on a 14-count indictment and faced more than a decade in prison. Rosalind S. Helderman and Carol D. Leonnig, *McDonnell rejected plea offer to face on felony, spare wife any charges, avoid trial*, Washington Post (Jan. 23, 2014). In *Silver*, the defendant chose not to seek a plea deal. Dareh Gregorian, *Sheldon Silver wasn't offered a plea deal in his upcoming corruption trial: prosecutors*, New York Daily News (Oct. 30, 2015). Both defendants went to trial arguing that the government had not proved they accepted

8

benefits in exchange for official acts, both were found guilty, both appealed, and both eventually won on appeal.

Petitioner did not make the argument and chose instead to plead guilty pursuant to a plea agreement submitted pursuant to Fed.R.Crim.P. 11 (c)(1)(C). The grand jury had returned an eight-count indictment against Petitioner which included four counts of mail fraud, two counts of wire fraud, one count of conspiracy to commit money laundering, and one count of interfering with the administration of the Internal Revenue laws. (ECF No. 18). Petitioner and the Government negotiated an agreement. As part of the agreement, Petitioner benefited from a reduced sentence. The agreement included a carefully crafted statement of facts designed to admit the minimum conduct necessary to establish guilt for the charged crime.

Accordingly, Petitioner has not shown cause to excuse his failure to raise the issue at trial and/or on appeal.

**III. Actual Innocence Gateway**

    **A.    Standard of Review**

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to raise arguments that would otherwise be procedurally barred. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). However, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

9

(1998)(citation omitted). Successful actual-innocence gateway pleas are "rare," and "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S.Ct. at 1928.

**B. Analysis**

Petitioner asserts that even if he cannot show cause, the court can review his petition because he has established an actual innocence gateway. (ECF No. 101, at 14). To create an actual innocence gateway, a petitioner must show that "in light of *new* evidence it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (emphasis added). "Without any new evidence of innocence, even the existence of a . . . meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Here, Petitioner has not brought forward any new evidence to suggest innocence and therefore cannot establish an actual innocence gateway.

Petitioner's motion to vacate his sentence is procedurally barred.

**IV. Honest Services Fraud**

Even if Petitioner's motion was not procedurally barred, it would still be denied.

Petitioner asserts:

> [He] was a public official of Egypt, and the same definition of [18 U.S.C.] § 201 that informed the meaning of honest-services fraud in *McDonnell* can inform the court's assessment of [Petitioner's] convictions. In light of *McDonnell*, it is now clear that [Petitioner] pleaded guilty to conduct in Count One that is not illegal.

(ECF No. 87-1, at 8). To conclude *McDonnell* applies, Petitioner assumes that he was exclusively a public official and that honest services fraud can only be defined in reference to the federal bribery statute, 18 U.S.C. § 201. Neither of these assumptions is correct. Petitioner was a private employee, and bribery has more than one *possible* definition.

Petitioner's argument first creates a false dichotomy in which a person is either a private or public employee, but Petitioner worked for both a private corporation and a public-private joint venture. He was – at least – an employee of a private corporation.[2] He breached a duty to that corporation, took bribes as an employee of that company, and pled guilty to

---

[2] It is not clear whether a person who works solely for a public-private joint venture would be a public official or a private employee.

11

private sector honest services fraud in relation to his conduct as an employee of Bechtel.

Petitioner also assumes that the Government - and the court - would have had to define honest services fraud by reference to the federal bribery statute, 18 U.S.C. § 201. (ECF No. 87-1, at 13). Section 201, however, is not the only definition of bribery. (ECF No. 87-1, at 12). In *McDonnell*, the government charged Governor Robert McDonnell with honest services fraud, and the parties "agreed to define honest services fraud with reference to the federal bribery statute." 136 S.Ct. at 2365. As a result, "the [g]overnment was required to prove that Governor McDonnell committed or agreed to commit an 'official act in exchange for the loans and gifts from [Jonnie] Williams.'" *Id.* The Court interpreted "official act" to mean "mak[ing] a decision or tak[ing] an action on," *id.* at 2370, "a 'question' or 'matter' . . . similar in nature to a 'cause, suit, proceeding or controversy.'" *Id.* at 2369.

Here, the Government did not agree that Petitioner was solely a public official. The plea agreement states on numerous occasions that he owed a duty to a private corporation. Petitioner's pre-trial motions practice emphatically stated that this was a "private-sector honest-services mail and wire fraud prosecution." (*See, e.g.,* ECF No. 53, at 1). Petitioner's sentencing memorandum candidly acknowledges, "By accepting these

12

payments and concealing them from his employer, Dr. Elgawhary violated his duty of honest services to Bechtel." (ECF No. 71, at 3). Moreover, the Government did not - and does not - agree that the definition of bribery under 18 U.S.C. § 201 applies. Other federal statutes supply different definitions for bribery, *see, e.g.,* 18 U.S.C. § 666, and kickbacks, *see, e.g.,* 41 U.S.C. §§ 8701, *et seq*. Accordingly, *McDonnell*, a case applying, the definition of § 201 bribery to a public official, does not establish that the conduct Petitioner pled guilty to is not illegal.

Petitioner pled guilty to mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, conspiracy to launder money in violation of 18 U.S.C. § 1956(h), and interference with the administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212. 18 U.S.C. § 1346 prohibits schemes to defraud another person of the intangible right of honest services. Section 1346 prohibits employees from participating in a bribery or kickback scheme "in violation of a fiduciary duty." *Skilling v. United States*, 561 U.S. 358, 407 (2010). Where an employee "solicit[s] or accept[s] side payments from a third party in exchange for making these misrepresentations" to benefit the third party, the employee commits honest services fraud. *Id.* at 2010.

As found in *United States v. Lusk*, No. 2:15-cr-00124, 2017

WL 508589, at *4 (S.D.W.Va. Feb. 2, 2017), honest services mail fraud when analyzed expansively contains the following eight elements:

> [C]ase law establishes that — in the Fourth Circuit and in the context of an honest - services mail fraud offense where the defendant was the employee of the allegedly harmed private-sector entity — the following extensive list encompasses the present elements for an honest-services mail fraud offense: (1) the existence of a fraudulent scheme, *see, e.g., United States v. Gibbs*, 132 F.App'x 502, 503 (4th Cir. 2005) (citations omitted); (2) this fraudulent scheme "deprive[d] another of honest services through bribes or kickbacks supplied by a third party who had not been deceived," *Skilling*, 561 U.S. at 404; (3) the defendant employee owed a fiduciary duty to the harmed private-sector entity, *see, e.g., United States v. Evans*, No. 2:14-cr-00113, 2015 WL 1808904, at *4 (S.D.W.Va. Apr. 21, 2015); (4) the defendant "employee intended to breach a fiduciary duty," *United States v. Vinyard*, 266 F.3d 320, 327(4th Cir. 2001) (citation omitted); (5) the defendant "employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach," *id.* (citation omitted); (6) the defendant employee "acted with specific intent to defraud," *United States v. Ham*, 998 F.2d 1247, 1254 (4th Cir. 1993) (citation omitted); (7) the fraudulent scheme must include a "materiality of falsehood," *Neder v. United States*, 527 U.S. 1, 25 (1999); and (8) the use of the mails in furtherance of the scheme, *e.g., Gibbs*, 132 F.App'x at 503 (citation omitted).

Petitioner's guilty plea established all the requisite elements of private sector honest services fraud. Petitioner

14

was an employee at Bechtel. Petitioner "owed a duty of loyalty to Bechtel[.]" (ECF No. 64-1, at 12). Petitioner "accepted payments from the consultants representing power companies . . . for the purpose of attempting to secure a competitive and unfair advantage in the bidding process." (*Id.*). Petitioner concealed and misrepresented material facts. He used the mail in furtherance of the scheme. Thus, Petitioner's plea establishes his guilt for the offense of honest services mail fraud.[3]

The Fourth Circuit recently affirmed a conviction under similar circumstances. In *United States v. Pinson*, 860 F.3d 152, 168-69 (4th Cir. 2017), the defendant, Jonathan Pinson, was a public official and, along with another, had helped a company obtain a contract to promote a concert at Pinson's employer, a state university. In return, Pinson received money from the company. The Fourth Circuit concluded:

> Regarding Count 12, Givens's testimony established that both he and Pinson wanted the University to choose W.E. Entertainment as its 2011 concert promoter. Givens also testified that he and Pinson expected to receive a portion of the company's pre-concert $12,500 payment. This pre-concert kickback was in addition to the disclosed post-concert profit-splitting plan that Pinson had with Joy and Robinson. The

---

[3] Petitioner's argument about his convictions for conspiracy to launder money and for interference with the administration of the Internal Revenue laws depends on vacating his plea to honest services mail fraud. Because the honest services mail fraud plea remains valid, Petitioner's argument about his other offenses does not need to be addressed.

> government also established that Givens received part of his expected kickback from Robinson, and that Pinson later received a similar portion from Robinson electronically. On this evidence, a rational jury could view Pinson's expected receipt of the kickback, coupled with his actions on W.E. Entertainment's behalf, as a scheme to defraud and deprive the University and the citizens of South Carolina of his honest services as Chairman of the Board of Trustees of SCSU.
>
> Pinson also aided Givens's decision to sign the actual concert promotion contract on behalf of the University with W.E. Entertainment. Givens's signing of the contract qualifies as an "official act," even under the more restrictive definition that the Supreme Court recently adopted when interpreting the term in a separate bribery statute. *See McDonnell*, 136 S.Ct. at 2371–72 (holding that an "official act" needed to be something more than "[s]etting up a meeting, hosting an event, or calling an official," and instead was a decision or action on a "question, matter, cause, suit, proceeding or controversy" which involves "a formal exercise of governmental power"). A rational jury could find, based on the evidence presented, that Pinson encouraged Givens to take this official act in anticipation of the pre-concert kickback that both officials expected to receive from Joy and Robinson.

If steering a contract constitutes public sector honest services mail fraud post-*McDonnell*, it also establishes private sector honest services mail fraud.

Petitioner has not demonstrated that he is being held in violation of the laws of the United States or the Constitution.

## V. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal quotation marks omitted).

Upon its review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it declines to issue a certificate of appealability.

## VI. Conclusion

For the foregoing reasons, the motion to vacate sentence filed by Petitioner Asem Elgawhary will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
